**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

******************************************
**In re:**                                      *

**Albert L. Gauvreau**
**Judith L. Gauvreau**

                                           **Chapter 7**
                                           **Case No. 05-21862**

      **Debtor**
******************************************
**Thomas Worster**
**Barbara Worster**

                                           **Adversary No. 06-2078**

      **Plaintiff**

**v.**

**Albert L. Gauvreau &**
**Judith Gavreau,**
      **Defendants**

      **Defendant**
******************************************

**Memorandum of Decision**

Within a year of filing their joint, voluntary bankruptcy petition, Albert Gauvreau and Judith Gauvreau quitclaimed their jointly-held real estate to Albert individually. After trial, the sole issue to be decided is whether that transaction will sustain Thomas and Barbara Worster's objection to Albert's chapter 7 discharge,[1] lodged pursuant to Bankruptcy Code § 727(a)(2)(A).[2]

---

    [1]    A separate order has already entered denying Judith Gauvreau's discharge.

    [2]    Unless otherwise indicated, all references to statutory sections are to the Bankruptcy Reform Act of 1978 ("Bankruptcy Code" or "Code"), 11 U.S.C. § 101 et seq., as

1

The Worsters cannot prevail: Albert's transmutation of his joint interest in real estate to a sole interest was not a "transfer" within the meaning of § 727(a)(2)(A).[3] The Worsters' invocation of res judicata principles, founded on a pre-bankruptcy state court default judgment, does not affect the result.

## Background

During her employment at a real estate firm owned by the Worsters, Judith Gauvreau embezzled a substantial sum. On December 14, 2004, with rumors of suit and attachment in the air, the Gauvreaus quitclaimed their jointly-owned real estate to Albert alone.[4] In January 2005 the Worsters filed a two count civil complaint against Judith and Albert. Count I outlined Judith's theft. Count II alleged that, aware of the Worsters' impending action against Judith, Judith and Albert fraudulently transferred their jointly owned property to Albert individually.[5]

The Gauvreaus defaulted and the state court entered final judgment for $ 92,048.50 (compensatory damages and interest) against Judith on May 4, 2005.[6] The judgment further

---

amended. Because the Gauvreaus' petition was filed before October 17, 2005, those Code amendments effected by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. No. 109-8, 119 Stat. 23, do not apply.

This memorandum sets forth my findings of fact and conclusions of law in accordance with Fed. R. Civ. P. 52 and Fed. R. Bankr. P. 7052.

[3]     The Worsters' complaint sets forth additional claims for relief, all of which were waived at trial.

[4]     Quitclaim Deed, Plaintiffs' Exhibit 3.

[5]     State court complaint, Plaintiffs' Exhibit 1A.

[6]     Among the remedies available to creditors in an action for relief against a transfer under the Uniform Fraudulent Transfer Act are "[d]amages in an amount not to exceed double the value of the property transferred or concealed . . . ." 14 M.R.S.A. § 3578(1)(C)(3).

provided that:

> 2. The transfer by Judith Gauvreau to Defendant Albert L. Gauvreau of her interest in the real property located on Ross Corner Road in Shapleigh, Maine [sic] by deed dated December 15, 2004 and recorded in the York County Registry of Deeds at Book 14319, Page 842 constitutes a fraudulent transfer as defined by 14 M.R.S.A. § 3571 et seq. and is hereby set aside. The effect of the Judgment shall be to void said deed and reinstate title in Judith Gauvreau and Albert L. Gauvreau as joint tenants.
>
> 3. When issued, the Writ of Execution evidencing the money damages portion of this Judgment shall encumber the interests of both of the Defendants in the real property described in paragraph 2 above.[7]

The Gauvreaus unsuccessfully sought relief from the judgment and, on the last day available to appeal, filed a joint chapter 13 bankruptcy petition. The Gauvreaus did not develop a feasible plan. They converted their case to chapter 7.

The evidence establishes that the December 2004 real estate conveyance from Albert and Judith as joint tenants to Albert individually was effected in a calculated attempt to frustrate the Worsters' attempts to secure their claims against Judith.

## Discussion

The Worsters' claim presents a novel issue: if (within one year of bankruptcy) a joint tenant participates in a transaction that posits sole ownership in him, with the intent to deceive creditors of the other joint tenant, does that action amount to a transfer that will support a discharge objection under 11 U.S.C. § 727(a)(2)(A)?

Section 727(a)(2) provides that, upon proper objection,[8] a discharge will be denied if:

---

[7] State Court Judgment dated May 4, 2005, Plaintiffs' Exhibit 1C. The record does not disclose whether execution has issued.

[8] Fed. R. Bankr. P. 7001(4), 4004.

3

> the debtor, with the intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has *transferred*, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed -
>
> > (A) *property of the debtor*, within one year before the date of the filing of the petition; or
> >
> > (B) property of the estate, after the date of the filing of the petition . . . .

11 U.S.C. § 727(a)(2)(emphasis supplied).

*The Discharge Exception Under 727(a)(2)(A)*

Consistent with the aim of providing an honest debtor with a fresh start, courts construe the Bankruptcy Code "liberally in favor of the debtor and strictly against the creditor." In re Brown, 108 F.3d 1290, 1292 (10th Cir. 1997). A discharge will be awarded to the "honest but unfortunate debtor," Martin v. Bajgar (In re Bajgar), 104 F.3d 495, 501 (1st Cir. 1997) (quoting Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)), but denied to those debtors who opt to "play fast and loose with their assets." Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997) (quoting Boroff v. Tully (In re Tully) 818 F.2d 106, 110 (1st Cir. 1987)). Section 727(a)(2) exemplifies the Code's twin policies of giving honest debtors a leg up and protecting the interests of creditors from debtors who would attempt to exploit them.

The starting point for determining 11 U.S.C. 727(a)(2)(A)'s applicability is the statute's words. "[T]he task of interpretation begins with the text of the statute itself, and statutory language must be accorded its ordinary meaning." In re Bajgar, 104 F.3d at 497 (quoting Telematics Int'l, Inc. v. NEMLC Leasing Corp., 967 F.2d 703, 706 (1st Cir. 1992)).

The First Circuit has determined that the language of § 727 is "sufficiently plain." Lassman v. Paulding (In re Paulding), — B.R. — , No. 06-1025, 2007 WL 1783867, at *6

4

(Bankr.D.Mass. Jun 20, 2007) (quoting In re Bajgar, 104 F.3d at 498).  To deny a discharge under § 727(a)(2)(A), there must be "(1) transfer or concealment of property (2) that belonged to the debtor (3) less than a year before the bankruptcy petition (4) with actual intent to hinder, delay or defraud a creditor."  Marrama v. Citizens Bank of Massachusetts (In re Marrama), 445 F.3d 518, 522 (1st Cir. 2006).

Albert concedes that he helped transfer Judith's interest in the property to himself alone less than a year before filing for bankruptcy, and that he did so intending to defraud the Worsters.  Thus, the viability of the Worsters' claim turns on whether Albert "transferred or permitted to be transferred property of the debtor."  § 727(a)(2).

Courts have analyzed the § 727(a)(2) in various contexts.   The courts of appeals disagree whether a "transfer" requires that property remain transferred in order for discharge to be denied, or whether a timely re-transfer can save discharge.  See Village of San Jose v. McWilliams, 284 F.3d 785, 794 (7th Cir. 2002) ("In enacting the Bankruptcy Code, Congress has determined that attempts, successful or not, to conceal, transfer, remove or destroy property cannot later be cured by remedial conduct, including undoing any transfers, if the transfer occurred within one year of filing the bankruptcy petition."); In re Bajgar, 104 F.3d 495 (holding that a chapter 7 debtor was not entitled to discharge despite his post-petition reversal of a fraudulent conveyance); but see First Beverly Bank v. Adeeb (In re Adeeb), 787 F.2d 1339 (9th Cir. 1986) (allowing the discharge of an involuntary debtor who attempted recovery of fraudulently transferred property).  Courts have also come to differing conclusions whether injury to creditors must be shown to block a discharge under § 727. See Davis v. Davis (In re Davis), 911 F.2d 560, 561 n.2 (11th Cir. 1990) (citing cases).

5

Though the cases diverge on § 727(a)'s fine points, a common thread runs throughout: in order to constitute a "transfer" subject to the consequences of § 727(a)(2)(A), the prospective bankruptcy debtor's property must have been removed, hidden, parted with or otherwise diminished. Without satisfaction of this requisite element, a discharge cannot rightly be denied under the Code. See 3 William L. Norton, Jr., Norton's Bankruptcy Law and Practice 2d § 74:4, at 74-8 (2007) ("By its terms, § 727(a)(2)] establishes that the fair dealing necessary to qualify for a discharge includes refraining from actions intended to injure creditors, including the transfer, concealment or destruction of property.")

We know that the Code's definition of "transfer" -- "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or an interest in property" – is meant to be read as broadly as possible. § 101(54); In re Bajgar 104 F.3d at 498 (quoting S.Rep. No. 989, 95th Cong. 27 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5813; H.R. Rep. No. 595, 95th Cong. 314 (1977)) (discussing the legislative history of § 101(54)). However, even the most liberal interpretation of the term will not buoy the Worsters' claim. When the Gauvreaus deeded Judith's joint interest in the property to Albert, Albert relinquished nothing. He did not dispose of his property or part with any interest in it. His holdings were not diminished or reduced in any way. The quitclaim deed *increased* his property. As to Albert, the event did not constitute a *transfer* of *his property*.

*The Res Judicata Contention*

Relying on the state court default judgment, the Worsters assert, without careful explanation, that principles of res judicata dictate judgment in their favor.

Preclusive effect will be given to pre-bankruptcy state court determinations where

6

appropriate. McAlister v. Slosberg (In re Slosberg), 225 B.R. 9, 13 (Bankr.D.Me. 1998). "The 'res judicata' doctrine is generally used inclusively, to refer to either claim preclusion or issue preclusion (i.e., collateral estoppel)." Heghmann v. Indorf (In re Heghmann), 316 B.R. 395, 403 n.6 (1st Cir. BAP 2004) (citations omitted); Fleet Nat'l Bank v. Gray (In re Bankvest Capital) Corp., 375 F.3d 51, 69 (1st Cir. 2004). Issue preclusion "prevents the reopening in a second action of an issue of fact actually litigated and decided in an earlier case." Camps Newfound/Owatonna Corp. v. Town of Harrison, 705 A.2d 1109, 1113 (Me. 1998) (quoting Beegan v. Schmidt, 451 A.2d 642, 644 (Me. 1982)). [9] In contrast, "[c]laim preclusion makes a valid, final judgment conclusive on the parties and their privies, and bars further litigation of all matters that were or should have been litigated in the action." Burrell-Richardson v. Mass. Board of Higher Educ. (In re Burrell-Richardson), 356 B.R. 797, 801 (1st Cir. BAP 2006) (quoting Jarosz v. Palmer, 436 Mass. 526, 766 N.E.2d 482, 488 n. 3 (2002)); see also Iannochino v. Rodolakis (In re Iannochino), 242 F.3d 36, 43 (1st Cir. 2001) (discussing the requirements of claim preclusion).

Claim preclusion cannot operate here, even if we were to assume that the Worsters' default judgment carried preclusive capacity.[10] Their state court action could not have put

---

[9] Issue preclusion can operate when four requirements are met: (1) the issue must have been presented; (2) that issue must have been actually litigated; (3) the determination of that issue must have been part of a final judgment; and (4) the determination must have been essential to the judgment. See In re Slosberg, 225 B.R. at 14.

[10] Whether a default judgment can provide the foundation for issue preclusion in subsequent actions is a murky question. Slosberg acknowledged but did not resolve the issue. There, the plaintiff obtained a default judgment in a malpractice suit against his former attorney. When the attorney subsequently filed for bankruptcy, the client invoked the preclusive effect of the state court judgment. Preclusion was inappropriate because the issue being litigated before the bankruptcy court was not an issue actually determined by the prior judgment. In re Slosberg,

7

Albert's bankruptcy discharge at issue.[11]

State court judgments have capacity to preclude issues material to discharge objections and dischargeability actions. See In re Slosberg, 225 B.R. at 13-16 (discussing issue preclusion in dishcargeability proceedings). But, again, even if the Worsters' default judgment would have preclusive effect, aside from intent (which is not in contest),[12] the issues determined by the state court do not coincide with those the Worsters seek precluded here. The state court's judgment was based on the fraudulent transfer of property by Judith to Albert and Albert's participation in that transfer. The state court did not determine, nor was it asked to determine, whether Albert's transfer of his own interest from joint to sole interest was a fraudulent transfer.

## Conclusion

For the reasons stated above, I conclude that the transmutation of Albert's real estate ownership from joint to sole ownership, which occurred in conjunction with Judith's divestiture

---

225 B.R. at 16. See generally, Pisnoy ex rel. Sonus Networks v. Ahmed (In re Sonus Networks), — F.3d —, No. 06-1937, 2007 WL 2325819, at *10 (1st Cir. Aug 16, 2007)(comprehensive discussion of preclusion principles in shareholder derivative suit context).

[11] The potential for claim preclusion does arise in bankruptcy proceedings. See, e.g., McGarry v. Chew (In re Chew), – F.3d – , No. 06-2123, 2007 WL 2165105 (1st Cir. Jul. 30, 2007) (barring a constructive trust claim before the bankruptcy court that was not raised in a prior state court action). But in certain actions unique to bankruptcy, there can be no claim preclusion. See, e.g., id. at *4-5 (citing and distinguishing Brown v. Felsen, 442 U.S. 127, 99 S.Ct. 2205 (1979)).

[12] Actual fraud is a necessary element to a discharge objection under § 727(a)(2)(A). Adams v. Zembko (In re Zembko), 367 B.R. 253, 257 (Bankr.D.Conn. 2007) ("The intent required under § 727(a)(2) is the debtor's actual fraudulent intent."); Staniuas v. Delisle (In re Delisle), 281 B.R. 457, 465 (Bankr.D.Mass. 2002) (citing In re Lang, 246 B.R. 463, 468 (Bankr.D.Mass. 2000) (To prevail under § 727(a)(2)(A), "[t]he Plaintiff must show the Debtor's actual, rather than constructive, intent to hinder, delay or defraud.")

of her interest, will not sustain the Worsters' objection to Albert's chapter 7 discharge. Judgment to enter forthwith.

Date: August 28, 2007

/s/ James B. Haines, Jr.
_____
James B. Haines, Jr.
U.S. Bankruptcy Judge